on this particular matter. I really don't have that. I want to state your name. I'm sorry. That's okay. Seymour Amster. It goes on the recording. Yes, I understand. In this particular case, what I really would address is any questions from the panel on this. Well, what did the jury look like that eventually sat in this case? Did have six African-Americans. Six African-Americans. Six African-Americans. Two Asians. Two Asians and one Latino. And the alternate juror was? I think it was African-American as well. And you're claiming that there was some kind of a racial discrimination in this case that denied your client a right to a trial of peers? I don't know why I thought that was the issue you were going to ask me the question on, so I'll answer. Well, let me ask you a different question. Did the prosecutor use all of her peremptory challenges or did she still have some? No, she certainly had some left. Pardon? She certainly had some left. Had some left. But yet she didn't challenge any of the six black members of the jury who were seated, did she? That is correct. And doesn't that at least suggest that the challenges that were made to some of the black prospective jurors were not based on their racial character but on something else? It's certainly something that this Court can consider. Not only consider, how do you have a prima facie case? If I may. Well, counsel, let me ask you this. Were any peremptory challenges used to challenge anyone that was not a minority? By the prosecution, one. Okay. Just one Caucasian. Batson is a rule for exclusion, not inclusion. So just because in the end you allow African-American jurors or minorities on your jury doesn't mean that you haven't been using your challenges for race motivation. Because if you put as an abstract matter, you're right. But in this record, it doesn't seem you get to a prima facie. You have to show a prima facie case. I understand. And I believe the strongest. And the judge took a look and says, this is a rainbow jury. What are you talking about? I don't know if he said that or not, but I can understand where that can be inferred. This is a far cry from Batson where there were four black prospective jurors and the prosecutor challenged all four of them. Yes, I agree. I think if you look, juror number nine is the one that I think is most compelling, being that she had a cousin who was a victim of a murder, by what she believed a relationship to the family. You have the exact same case here. No further questions are asked except for the five standard questions to determine if there is potential problems with it. It was just a standard decision. So in other words, I believe the record shows that the prosecutor was using two standards, one for non-minorities and one for minorities. You're on juror nine now? Juror nine. Juror nine's cousin was strangled to death. Despite juror nine's belief that her cousin was strangled by her boyfriend, she stated the police didn't gather enough evidence to detain the boyfriend. Thus, the prosecutor believed that juror nine might allow this experience with police to affect her impartiality. And that is, the prosecutor never stated that. That is what we believe was in the prosecutor's head or what the attorney general is arguing on the point, because the prosecutor never said anything on the record of what the reason for her using the challenge was. That's just our inferences. And if that was the concern of the prosecutor, why doesn't she ask the question? I mean, every single day we have situations where we have somebody who might not have been happy with police contacting even a traffic ticket, and we ask the questions. Are you going to be prejudiced or not by the police? I think the – when we look at the entire record on this case and we go into the prosecutorial misconduct that was not certified as an issue, but yet we look at the prosecutorial misconduct, it gives us circumstantial evidence that maybe at times this prosecutor was not acting in a proper fashion. Well, of course, the prosecutor doesn't have to give any reason for a peremptory challenge. The prosecutor could challenge me because she doesn't like the way I comb my hair. But that's within the – you don't have to. You have to show that these challenges were the result of improper motivation based on racial hostility or something like that. You have to show reasonable inference. And I believe that when you have five jurors challenged, you have six jurors challenged, so you have five of the six African Americans, I think you have raised a reasonable inference instead of a strong likelihood. It sounds like – it sounds to me as though the veneer was comprised of mostly African Americans. Where was this tried? Compton or someplace like that? No. Criminal Courts Building. Criminal Courts Building. I mean, it sounds to me from looking at this that almost everybody in the room was an African American when they were picking this jury. Well, again, I stress on my argument that Batson is one of exclusion, not of inclusion. Just because we end up with a juror of peers of the defendant does not necessarily mean that Batson wasn't violated because then it limits the ability of what the defense can challenge, and it gives them an unfair advantage. But if we look past that abstraction for anything the prosecutor said suggesting a problem, I couldn't find anything. Well, because she was directed not to speak. Because the judge felt there hadn't been a prima facie showing. Under the strong likelihood test of California. Under any test. Well, why don't you save the rest of your time. We'll hear from the other side, and you can respond. Thank you, Counsel. Good morning. David Wildman, Deputy Attorney General for the Respondent. In Turnery v. Marshall, the Ninth Circuit stated that the make of the actual jury impound is indicative of the prosecutor's intent in choosing the jury. Here we have the jury had six blacks on it. Therefore, that's indicative of the prosecutor's intent. Also, you look at this case. This was not a case where there's any reason why a prosecutor would want to kick off a black juror. It may have been a black defendant, but the victim was also black. So there's no reason that one would assume that. This was not a racially charged case. And the actual jury impound did not show that any. But, Counsel, at what point do we look at these statistics in terms of the number of African-American jurors who were actually excluded, regardless of the ultimate makeup of the panel? What role do the – what significance does that have? Well, it's certainly one factor to look at. However, in this case, we don't know what the entire jury pool looked like. And it may have been that if the entire jury pool was mainly African-American, the fact that the prosecutor exercised most of the preemptives against African-Americans didn't really mean anything, because the likelihood would be that an African-American would replace that person kicked off. It's simply one factor to look at. We're a little bit handicapped here because we're not in the trial court. We don't have – we can't see what the entire jury pool looked at. We don't have the tone of voice, the demeanor of the jurors in answering questions. In that case, I'd like to emphasize that there still exists a presumption that's on habeas corpus that it is a valid State judgment, and it is Petitioner's burden to overcome that. And there's nothing in the record talking about these things. What about the standard that the Court used, the strong likelihood standard? How did that affect – what effect did that have on the ruling, if any? Well, I think what you're referring to is the trial judge. The trial judge, yes. Referred to the Batson standard. Right. And the California Supreme Court in People v. Johnson this year, actually last year, said that Batson and Wheeler are the same standard, and therefore, as far as California is concerned, they are using the Batson standard. Retroactively? Well, the Court – the Supreme Court of California said it's the same standard and always has been so, so that seems to indicate it was retroactive. How are the two standards articulated? What's the Batson standard? The Batson standard is raise and inference. Raise and inference. And the standard used by the trial court and by the Court of Appeals was strong likelihood? Well, the trial court, I believe, simply referred to Wheeler. It didn't elucidate on what that meant. The California Court of Appeals did say strong likelihood. Right. That sounds awfully different than raise and inference. I mean, clear and convincing evidence sounds awfully different than preponderance. And strong likelihood, as compared to just raise and inference, that sounds like awful – a much different standard. The Supreme Court said this after the fact. That's not very convincing. Well, the Supreme Court also did say this prior to this in Box. People v. Box. However, since then, in Wade v. Terhune, the Ninth Circuit said we don't think it's the same standard. Right. And the California Supreme Court took another look at it in Johnson and said it is the same standard. I just want to note, before I go any further, that Johnson is – was granted cert by the U.S. Supreme Court. So I don't want to mislead the Court there. And the issue that the – was on whether the more likely than not is the – is the Batson standard. Was the Batson standard? Let me ask you a somewhat different hypothetical. Suppose, for the sake of argument, that the prosecution exercised five and only five for emptory challenges, and that each one of these challenges was of a black jury person. That's all the prosecution – would that raise a prima facie case? Well, Batson says that the – I don't want to know what Batson says. I want you to tell me the answer. Would that – would that be enough to raise a prima facie case and, therefore, shift the burden to the prosecution to explain that? And let's assume the rest of the case was as is. That is, the ultimate jury ended up with six blacks and everything. But there were five preemptory challenges used by the prosecution, and each one of those was only of a black juror. Would that be enough to create a prima facie case? If that was the only fact that the trial court knew, then the answer would have to be yes, that would raise a case. But that's not the only fact the trial court knew. The trial court sat through the voir dire of the jurors and heard reasons that a reasonable prosecutor might excuse these jurors for. But the court never got to that. If the presumption is never triggered, if the inference is never raised, then the prosecution never has to give an explanation. So there's nothing in the record to indicate the reasons, is there? We do not know the prosecutor's reasons. They're not in the record. Nobody knows them. All we know is what's in the record and that these are jurors that a reasonable prosecutor might have removed for these reasons. And therefore, it's not simply the only thing that we know about these particular jurors is race and nothing else. So how would you like us to resolve this case? Explain how you think it ought to be written up, you know, encapsulated. We what? For what reasons? What do you want us to do? Well, I think that Petitioner has not overcome the presumption that it's a valid State judgment, that the trial court was there, present in the room with the jury, heard the whole voir dire, made a mistake in not finding a problem with such a case. Even though the trial judge may have articulated and been operating under the wrong standard, at least for now the wrong standard? Well, based on even what's in the cold record and even looking under the reason inference standard of Batson, it does not appear that there was a mistake made by the trial court. Who was the trial judge? Do you know offhand? I believe it was Norman Shapiro. Do you have anything else? Nothing else, Your Honor. Thank you, counsel. May I respond? The district court and the magistrate correctly found that this is a de novo review because the wrong standard was utilized by the State court. So if we use a de novo review, what do we do? Use a de novo review. In my opinion, I believe that there was a prime facia case shown by Petitioner for a reasonable inference, and it's reversed. What's the showing? The showing is that four out of five jurors excluded being African-American with no further follow-up questions. That means that six African-American jurors were accepted. Yes. But, again, at what point during the process does a defense counsel make a decision that, you know, I'm losing these Batson motions, and I've got to accept the best that I can? And that's the problem. When you're faced with a strategical decision that I'm not getting anywhere here, I've got to do the best I can, and you pick the best jury you can under the situation, not the best jury the Constitution allows, the best jury on a situation, because the best way to win an appeal is to win the trial. So strategically, you have to make those decisions at times. And that's why it's hard to say, well, gee, you know, you ended up with this jury, so don't complain. Well, no. These were the individuals I wanted because there was no reason to have them excluded. And so now I'm being limited to how I can use my choice. It would be nice if counsel would have at least said that rather than relying on you years later to come up with that as an explanation. The statements that have occurred in the hallways of this case I am not going to go into. Yes. Yes. I agree. But I'm confined with what I have. It is clear that California, the State courts were wrong for a long period of time on what standard to utilize. I think that this district has shown that and has stated that in case after case. But counsel, does it make a difference in this case? I believe it does. And I believe that the final trigger or the final weight is looking at the prosecutor's misconduct during closing argument, she was not handling things in a fair manner. But what does that have to do with jury selection? Well, it shows her state of mind, because aren't we talking, I mean, in all reality we're talking about her state of mind. So we're trying to find circumstances. I don't see why that is. A prosecutor could have absolutely no racial bias at all and still be willing to engage in mischief in the conduct of the trial. That seems to me those are two different things. I don't want to disparage somebody, but it shows how well you're willing to stay within the lines or not, how far outside you're going to go. This was a very emotionally charged case. Judge Shapiro, I think, did the best job he could. I mean, the record is complete with the bickering between the defense attorney and the prosecutor. And there's also picketing going outside during this case. So there was one question that was raised about, I don't know, racial motivation or something or why at the time, and I forget who from the panel asked it. But clearly this was during the embryonic period of the three strikes law. There was a lot of emotions going on. And this case was like a three-ring circus. I mean, you had people spouting out. There's always a three-ring circus in the criminal courts. All right. Thank you very much. The case is argued as ordered and submitted. We'll call the next case, which is Dora v. Cambra. Thank you.
judges: Friedman , Trott, Rawlinson